1  JASON A. GELLER (SBN 168149)
   Email:  jgeller@fisherphillips.com
2  VINCENT J. ADAMS (SBN 249696)
   Email:  vadams@fisherphillips.com
3  FISHER & PHILLIPS, LLP
   One Embarcadero Center, Suite 2050
4  San Francisco, California 94111
   Telephone:  (415) 490-9000
5  Facsimile:   (415) 490-9001
6
7  Attorneys for Defendants
   AYTU BIOSCIENCE, INC., JOSH DISBROW,
8  and JARRETT DISBROW

9

10                    UNITED STATES DISTRICT COURT

11                  NORTHERN DISTRICT OF CALIFORNIA

12  ROBERT DAVID JAEKEL, an individual,          Case No:

13              Plaintiff,

14       vs.                                      **NOTICE OF REMOVAL OF ACTION TO
                                                  UNITED STATES DISTRICT COURT
15  AYTU   BIOSCIENCE,   INC.,   a   Delaware     (DIVERSITY)**
    corporation; JOSH DISBROW, an individual;
16  JARRETT DISBROW, an individual; RICK          **[28 U.S.C. §§ 1332 and 1441(b)]**
    NORD, an individual; and DOES 1 through
17  50, inclusive,                                [*Filed Concurrently with Declaration of
                                                  Vincent J. Adams; Declaration of Jarrett
18              Defendants.                       Disbrow; Declaration of Joshua Disbrow;
                                                  Appendix of State Court Pleadings; Certificate
19                                                of Interested Parties; and Civil Cover Sheet*]

20                                                [*Removed from San Francisco Superior Court,
                                                  Civil Case No.:* CGC-19-581302]
21

22                                                Action Filed:    December 4, 2019
                                                  Removal Date:   January 15, 2020
23                                                Trial Date:      None Set

24

25

26

27

28

**TO PLAINTIFF AND THE CLERK OF THE ABOVE-ENTITLED COURT:**

**PLEASE TAKE NOTICE** that Defendants Aytu BioScience, Inc. ("Aytu"), Josh Disbrow, and Jarrett Disbrow (collectively, the "Individual Defendants" and with Aytu, "Defendants"), by and through the undersigned counsel, hereby invoke this Court's jurisdiction pursuant to 28 U.S.C. §§ 1332(a) and 1441(a) and removes the above-referenced action of Plaintiff Robert David Jaekel from the Superior Court of California, County of San Francisco to the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1446(b).

## I.    PLAINTIFF'S COMPLAINT

1.    On December 4, 2019, Plaintiff Robert David Jaekel ("Plaintiff") filed a civil action in the Superior Court of the State of California for the County of San Francisco, entitled *Robert David Jaekel, an individual v. Aytu Bioscience, Inc., a Delaware corporation; Josh Disbrow, an individual; Jarrett Disbrow, an individual; Rick Nord, an individual; and DOES 1 through 50, inclusive*, Case No CGC-19-581302 (the "Complaint" and/or "State Court Action").

2.    The Complaint asserts causes of action against Defendants for: (1) Whistleblower Retaliation (against all Defendants); (2) Retaliation [Cal. Lab. Code § 98.6] (against all Defendants); (3) Failure to Take Steps Necessary to Prevent Sexual Harassment and/or Retaliation (against Defendant Aytu); (4) Retaliation [Cal. Gov't Code § 12940(h)] (against Defendant Aytu); (5) Wrongful Termination in Violation of Public Policy (against Defendant Aytu); (6) Defamation (against Defendants Josh Disbrow and Jarrett Disbrow); (7) Intentional Infliction of Emotional Distress (against all Defendants); and (8) Failure to Pay All Wages Due to Discharged Employees (against Defendants Aytu, Josh Disbrow and Jarrett Disbrow).

3.    Service of process of the Summons and Complaint was effectuated on Defendant Aytu Bioscience, Inc.'s agent for service, Lynanne Gares, Litigation Management Services Leader-CSC, on December 16, 2019. *See*, Declaration of Vincent J. Adams ("Adams Decl.") at ¶ 2. Defendant Josh Disbrow was served via personal service on Friday, January 3, 2020. *Id.* at ¶ 3. Defendant Jarrett Disbrow was served via personal service on Friday, January 3, 2020. *Id.* at ¶ 4. To Defendants' knowledge, Defendant Rick Nord has not yet been personally served, though

NOTICE OF REMOVAL OF ACTION TO UNITED STATES DISTRICT COURT (DIVERSITY)
FP 36945712.1

Plaintiff attempted to leave the Summons and Complaint at Nord's former workplace, Defendant Aytu's headquarters in Englewood, Colorado on Friday, January 3, 2020. *Id.* at ¶ 5. Along with the Summons and Complaint, Plaintiff served Defendants with a Civil Case Cover Sheet, Notice of Case Management Conference, Alternative Dispute Resolution Information Package, and Stipulation to Alternative Dispute Resolution. *Id.* at ¶ 4. True and correct copies of the foregoing are attached as Exhibits A-G to the Appendix, filed concurrently herewith. *Id.* at ¶¶ 2, 6.

4.      On Monday, January 13, 2020, Defendants Aytu, Jarrett Disbrow and Josh Disbrow filed an Answer to the Complaint in the State Court Action. *Id.* at ¶ 7. A true and correct copy of Defendants' Answer to the Complaint in the State Court Action is attached as Exhibit H to the Appendix, filed concurrently herewith. *Id.* at ¶ 7.

5.      The Summons, Complaint, Civil Case Cover Sheet, Notice of Case Management Conference, Alternative Dispute Resolution Information Package, Proof of Service of Summons, and Answer of Defendants constitute all pleadings, process and orders served in the State Court Action. *Id.* at ¶ 9.

**II.      VENUE**

6.      This action was filed in the Superior Court of California for the County of San Francisco. Thus, venue properly lies in the United States District Court for the Northern District of California.  *See*, 28 U.S.C. §§ 84(b), 1391, and 1441(a).

**III.      BASIS FOR REMOVAL JURISDICTION**

**A.      Diversity Jurisdiction**

7.      As set forth below, complete diversity exists between Plaintiff, on the one hand, and Defendants, on the other. Further, no Defendant is a citizen of the state of California.

***1.      Plaintiff's Citizenship***

8.      To establish citizenship for diversity purposes, a natural person must be domiciled in a particular state. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). Natural persons are domiciled in the places they reside with the intent to remain or to which they intend to return. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). Residence is *prima facie* evidence of domicile. *Mondragon v. Capital One Auto Fin.*, 736 F.3d 880, 886

NOTICE OF REMOVAL OF ACTION TO UNITED STATES DISTRICT COURT (DIVERSITY)
FP 36945712.1

1    (9th Cir. 2013); *State Farm Mut. Auto. Ins. Co. v. Dyer,* 19 F.3d 514, 520 (10th Cir. 1994);

2    *Marroquin v. Wells Fargo, LLC*, No. 11CV163-L BLM, 2011 WL 476540, at \*1 (S.D. Cal. Feb.

3    3, 2011). An existing domicile is presumed to continue. *Mitchell v. United States*, 88 U.S. 350,

4    353 (1875) ("[D]omicile once acquired is presumed to continue until it is shown to have been

5    changed."); *Mintzis v. Scott*, No. 2:14-CV-01799-CAS, 2014 WL 3818104, at \*5 (C.D. Cal. July

6    30, 2014. It is presumed that a natural person's residence is also his or her domicile, and a party

7    resisting this presumption bears the burden of producing contrary evidence. *Lew v. Moss*,

8    797 F.2d 747, 751 (9th Cir. 1986).

9        9.      Plaintiff alleges that, at all times relevant hereto, he was a resident and citizen of

10   California, and that he performed work for Defendants in the County of San Francisco, and the

11   that the acts alleged in his Complaint occurred in California. Complaint at ¶¶ 2, 3, and 4.

12   Accordingly, Plaintiff is, and at all relevant times was, a citizen of and domiciled in California

13   for purposes of determining diversity. 28 U.S.C. § 1332(a).

14                      ***2.      Citizenship of Aytu***

15       10.     A "corporation shall be deemed to be a citizen of any State by which it has been

16   incorporated and of the State where it has its principal place of business."   28 U.S.C.

17   § 1332(c)(1); *Nike, Inc. v. Comerical Iberica De Exclusivas Deportivas, S.A.*, 20 F.3d 987, 990

18   (9th Cir. 1994).

19       11.     From the time Plaintiff filed his Complaint through the date of removal,

20   Defendant Aytu was and is a corporation incorporated in Delaware with its headquarters in

21   Englewood, Colorado, and its principal place of business in Englewood, Colorado. *See,*

22   Declaration of Jarrett Disbrow ("Jarrett Disbrow Decl.") at ¶ 2.

23       12.     Defendant Aytu's principal place of business is in Englewood, Colorado, under

24   the "nerve center test."[1]   *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010) (adopting "nerve

25

26       [1] The "nerve center" test is generally applied when a corporation's activities, like Aytu's,
     are conducted in many states. *See, Lurie Co. v. Loew's San Francisco Corp.*, 315 F. Supp. 405,
27   412 (N.D. Cal. 1970). Given that Aytu's central functions are concentrated in Colorado, the
     "place of operations" for Aytu is also in Colorado. *See, Tosco Corp. v. Communities for a Better
28   Environment*, 236 F.3d 495, 497 (9th Cir. 2001).

center" test for establishing principal place of business). "In an effort to find a single, more uniform interpretation" of "principal place of business," the United States Supreme Court held in *Hertz Corp. v. Friend*, that "principal place of business" is "best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Id.* In other words, "the place that Courts of Appeals have called the corporation's 'nerve center.'" *Id.* at 93. "[I]n practice," it is "the place where the corporation maintains its headquarters." *Id.* Additionally, relevant considerations under the "nerve center" test include: (1) where the executives have their offices; (2) where the administrative and financial offices are located and the records kept; (3) where the corporate income tax return is filed; (4) where the "home office" is located; and (5) where day-to-day control of the business is exercised. *See, Unger v. Del E. Webb Corp.*, 233 F. Supp. 713, 716 (N.D. Cal 1964).

13.    Applying the "nerve center" test to Aytu, it is clear that Aytu's principal place of business is in Colorado. Aytu's headquarters is in Englewood, Colorado and Aytu's "home office" is located in Englewood, Colorado. Jarrett Disbrow Decl. at ¶ 3. Almost all of Aytu's top executives work, direct, control, and coordinate the company's activities from Colorado, and day-to-day control of the business is likewise exercised from Colorado. *Id*. Aytu maintains corporate and administrative records, along with administrative and financial offices, in Colorado. *Id.*

14.    Accordingly, Aytu is a citizen of Delaware (state of incorporation) and Colorado (principal place of business) for diversity purposes.

### a.    Citizenship of Individual Defendants

15.    Individual Defendant Jarrett Disbrow is a citizen of North Carolina, where he is a resident of and domiciled. Jarrett Disbrow Decl. at ¶ 4. As alleged in the Complaint, Josh Disbrow and Rick Nord are both residents of Colorado. Complaint at ¶¶ 6-7; Declaration of Joshua Disbrow ("Josh Disbrow Decl.") at ¶ 2; Jarrett Disbrow Decl. at ¶ 5.

16.    Accordingly, the Individual Defendants are citizens of and domiciled in North Carolina or Colorado for purposes of determining diversity. *See also,* 28 U.S.C. § 1332(a).

///

NOTICE OF REMOVAL OF ACTION TO UNITED STATES DISTRICT COURT (DIVERSITY)
FP 36945712.1

**b.    Doe Defendants' Citizenship**

17.    Defendants are not aware that any Doe Defendants have been served with a copy of the Summons and Complaint or that they have been named as parties to the State Court action. *See,* Jarrett Disbrow Decl. at ¶ 6; Josh Disbrow Decl. at ¶ 3. The Court may disregard unidentified Doe Defendants for purposes of determining whether diversity jurisdiction exists. *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987); *See also,* 28 U.S.C. § 1441(b)(1).

**3.    *Amount in Controversy***

17.    The Court has diversity jurisdiction over an action in which the parties are not citizens of the same state and "the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs."  28 U.S.C. § 1332(a).

18.    The $75,000 threshold necessary for diversity jurisdiction is not particularly burdensome. When seeking removal of a state action to federal court based on diversity jurisdiction, "a defendant's notice of removal needs to include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S.Ct. 547, 554 (2014). The failure of the Complaint to specify the total amount of damages or other monetary relief sought by Plaintiff does not deprive this Court of jurisdiction. *See, Saulic v. Symantec Corp.*, No. SA CV 07-610 AHS (PLAx), 2007 WL 5074883, *5 (C.D. Cal. Dec. 26, 2007); *Parker-Williams v. Charles Tini & Associates, Inc.*, 53 F. Supp. 3d 149, 152 (D.D.C. 2014) (amount in controversy threshold in a disability discrimination case was undoubtedly met after taking into account Plaintiff's ability to recover unspecified amounts of compensatory damages, punitive damages, and attorneys' fees); *White v. J. C. Penney Life Ins. Co.,* 861 F. Supp.  25, 26 (S.D. W.Va. 1994) (defendant may remove suit to federal court notwithstanding failure of plaintiff to plead specific dollar amount in controversy; if the rules were otherwise, "any Plaintiff could avoid removal simply by declining…to place a specific dollar claim upon its claim."). Defendant need only to establish by *a preponderance of evidence* that the claims exceed the jurisdictional minimum. *Rodriguez v. AT & T Mobility Servs. LLC*, 728 F.3d 975, 982 (9th Cir. 2013); *Singer v. State Farm Mutual Auto. Ins. Co.,* 116 F.3d 373, 376 (9th Cir. 1997).

NOTICE OF REMOVAL OF ACTION TO UNITED STATES DISTRICT COURT (DIVERSITY)
FP 36945712.1

18. In the instant case, Plaintiff's complaint alleges violations of (1) Whistleblower Retaliation (against all Defendants); (2) Retaliation [Cal. Lab. Code § 98.6] (against all Defendants); (3) Failure to Take Steps Necessary to Prevent Sexual Harassment and/or Retaliation (against Defendant Aytu); (4) Retaliation [Cal. Gov't Code § 12940(h)] (against Defendant Aytu); (5) Wrongful Termination in Violation of Public Policy (against Defendant Aytu); (6) Defamation (against Defendants Josh Disbrow and Jarrett Disbrow); (7) Intentional Infliction of Emotional Distress (against all Defendants); and (8) Failure to Pay All Wages Due to Discharged Employees (against Defendants Aytu, Josh Disbrow and Jarrett Disbrow).

19. Plaintiff's complaint seeks an unspecified amount of actual, consequential and incidental losses, civil penalties, and punitive damages in an amount appropriate to punish Defendants and to make an example of Defendants in the community. It is facially apparent that the allegations in the complaint demonstrate that the amount in controversy in this matter exceeds $75,000.00. *White v. FCI USA, Inc.* 319 F.3d 672, 274 (5th Cir. 2003) (Satisfaction of amount in controversy threshold was "facially apparent" from wrongful termination allegations showing "lengthy list of compensatory and punitive damages.")

19. Defendants adamantly deny Plaintiff's allegations, deny any liability, and deny that Plaintiff has suffered any damages. Nevertheless, in assessing the amount in controversy for diversity jurisdiction purposes, a court must assume that a jury will return a verdict for the plaintiff on all claims made in the complaint. *Bank of California Nat. Ass'n v. Twin Harbors Lumber Co.*, 465 F.2d 489, 491 (9th Cir. 1972); *Roth v. Comerica Bank*, 799 F. Supp. 2d 1107, 1117 (C.D. Cal. 2010); *Kenneth Rothchild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002).

20. Further, a court must account for claims for not only compensatory damages but also punitive damages. *See, e.g.*, *Bell v. Preferred Life Ass'n Society*, 320 U.S. 238, 240 (1940) ("Where both actual and punitive damages are recoverable under a complaint, each must be considered to the extent claimed in determining jurisdictional amount."); *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001), *holding modified on other grounds by Exxon Mobil*

7

1   *Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546 (2005) ("It is well established that punitive
2   damages are part of the amount in controversy in a civil action."). The ultimate inquiry is what
3   amount is put in controversy by a plaintiff's complaint, not what the amount of a defendant's
4   liability (if any) will ultimately be.

5   　　21.   In the instant case, Plaintiff's Complaint seeks recovery of compensatory
6   damages, general damages for emotional distress, attorney's fees, exemplary or punitive
7   damages, and civil penalties.  *See,* Complaint at ¶¶ 45-46, 50-52, 59-61, 65-66, 70, 76-77, 82-83,
8   90-91, 99-100, and p. 17:15 – 18:6 attached to the Appendix as Exhibit B. Although Defendants
9   deny Plaintiff's claims of wrongdoing and her unspecified requests for relief thereon, the
10  facial allegations in the Complaint and total amount of estimated compensatory damages,
11  special damages, and exemplary (punitive) damages at issue are well in excess of $75,000.00.

12  　　22.   **Lost Wages and Benefits**: Plaintiff's Complaint alleges, among other claims, that
13  his employment was terminated in violation of the California Fair Employment and House Act
14  ("FEHA") and public policy, retaliation in violation of Labor Code section 98.6; Whistleblower
15  retaliation, including retaliation in violation of Labor Code 1102.5, Defamation, Intentional
16  Infliction of Emotional Distress and Failure to Pay All Wages Due. *See Generally,* Complaint.
17  Plaintiff also asserts a claim based on failure to prevent discrimination in violation of Cal. Gov.
18  Code § 12940(k). Plaintiff seeks compensatory damages. *See,* Complaint at ¶ 1. In particular,
19  Plaintiff claims he suffered "substantial lost wages and economic damages."  Complaint at ¶¶ 45-
20  46; *Wysinger v. Auto. Club of S. Cal.*, 157 Cal. App. 4th 413, (2007) ("Under FEHA, an employee
21  . . . may be compensated for a future loss of earnings."). For example, Plaintiff avers he suffered
22  "monetary damages" in addition to humiliation, mental anguish, and physical and emotional
23  distress as a result of the alleged retaliation against him in violation of the FEHA. Complaint at
24  ¶ 70.

25  　　23.   Importantly, the Ninth Circuit recently clarified that future lost wages, i.e., lost
26  wages beyond the date of removal, are properly considered in determining the amount in
27  controversy. *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018). The court
28  explained that the correct measure is the "amount at stake in the underlying litigation." *Id.* (citing

NOTICE OF REMOVAL OF ACTION TO UNITED STATES DISTRICT COURT (DIVERSITY)
FP 36945712.1

*Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 648 (9th Cir. 2016)). The court held that the fact that "the amount in controversy is assessed at the time of removal does not mean that the mere futurity of certain classes of damages precludes them from being part of the amount in controversy," explaining:

> If a plaintiff claims at the time of removal that her termination caused her to lose future wages, and if the law entitles her to recoup those future wages if she prevails, then there is no question that future wages are "at stake" in the litigation, whatever the likelihood that she will actually recover them. In such a situation, although the plaintiff's employer would have paid the wages in the future had she remained employed, they are presently in controversy.

*Id.* Accordingly, the proper measure of lost wages (as well as other claimed damages) for the amount in controversy is the amount which would be incurred up until trial.

24.     Here, Plaintiff earned an annual base salary of $100,000 (in addition to commission, which is not relied on here for purposes of establishing whether the amount in controversy is satisfied). *See,* Adams Decl. at ¶ 11. Thus, dividing Plaintiff's annual salary by 52 and again by 40 and multiplying by 8, Plaintiff's daily rate of pay was $384.61, and his hourly rate of pay was $1,923.08 per week. *See,* Adams Decl. at ¶ 12. Plaintiff alleges he was terminated on October 28, 2019. Based on the conservative estimate of a trial date one year from the date of filing, there are 57 full weeks from October 28, 2019 to the conservative trial date estimate of December 4, 2020 (one year from the date of the December 4, 2019 filing). *See,* Complaint at ¶ 40. At Plaintiff's hourly rate of pay, 57 weeks of lost wages totals **$109,614.00.**

25.     **Penalties for Alleged Retaliation Under Labor Code Section 98.6**: Plaintiff's Second Cause of Action for Retaliation asserts retaliation in violation of Labor Code section 98.6. *See,* Complaint at ¶¶ 54-55. Plaintiff's Prayer for Relief seeks civil penalties "in the amount of ten thousand dollars (**$10,000**) for each violation" under Labor Code section 98.6. Applying the most conservative estimate of one violation, Plaintiff at minimum places **$10,000.00** in controversy for this cause of action.

26.     **Waiting Time Penalties Under Labor Code Section 203**: Plaintiff alleges he was not paid all wages upon his termination. *See,* Complaint at ¶ 95. As a penalty, Plaintiff seeks "waiting time penalties in the form of continued compensation to the employee at the same rate

NOTICE OF REMOVAL OF ACTION TO UNITED STATES DISTRICT COURT (DIVERSITY)
FP 36945712.1

for up to 30 workdays." *Id.* at ¶ 98. At least thirty days have elapsed since his October 28, 2019 alleged termination to the date of removal. Thirty days pay at his daily rate of pay is:  $11,538, and therefore Plaintiff's Eighth Cause of Action places at least **$11,538.00** in controversy. [2]

27.    **Emotional Distress Damages**: Plaintiff also seeks damages for emotional distress, including "humiliation, mental anguish, and physical and emotional distress" which are authorized under FEHA. *See,* Complaint at ¶¶ 65, 70, 77; *Commodore Home Systems, Inc. v. Superior Court*, 32 Cal. 3d 211, 215 (1982) (emotional distress damages recoverable under FEHA statutory scheme). These emotional distress damages are included in the amount of controversy. *Simmons v. PCR Technology*, 209 F. Supp. 2d 1029, 1034 (N.D. Cal. 2002). While plaintiff does not specify the amount he seeks, "emotional distress damages in a successful employment discrimination case may be substantial," and that rings particularly true for race discrimination and retaliation cases such as the present case. *Id.*

28.    Recent verdicts in employment cases confirm that emotional distress awards may be substantial:

(a)    *Andrews vs. Hansa Stars Inc.*, Superior Court, Los Angeles County, 2009 WL 1587809 (Cal. Super. Apr. 16, 2009) (in connection with wrongful termination claims, two of the plaintiffs were awarded **$375,000** and **$225,000** for emotional distress damages).

(b)    *Silverman vs. Stuart F. Cooper Inc.*, Los Angeles County, 2013 WL 5820140 (Cal. Super. July 19, 2003) (jury awarded the plaintiff **$151,333** for past and future emotional distress in wrongful termination, FEHA discrimination, FEHA retaliation, FEHA harassment/failure to prevent discrimination and harassment, and failure to pay final wages and waiting time penalties case). *See, Ontiveros v. Michaels Stores, Inc.*, No. CV 12-09437 MMM (FMOx), 2013 WL 815975, at *2 (C. D. Cal. Mar. 5, 2013) (a court may consider verdicts in similar cases when determining whether the amount in controversy exceeds the jurisdictional minimum where the complaint on its face does not identify a specific amount in controversy);

_____

[2] Indeed, Plaintiff alleges in this cause of action that "Plaintiff has been deprived of compensation in an amount according to proof at trial, but in excess of the jurisdiction of this Court[.], which indicates that Plaintiff himself seeks $25,000 for this claim alone, plus interest, attorneys' fees and costs. *See,* Complaint at ¶ 100.

NOTICE OF REMOVAL OF ACTION TO UNITED STATES DISTRICT COURT (DIVERSITY)
FP 36945712.1

*Marcel v. Pool Co.*, 5 F.3d 81, 83 (5th Cir. 1983) (court properly considered jury verdicts in other similar cases to reach conclusion that the amount in controversy exceeded $75,000.00).

29.     Indeed, district courts in California have found that it is not unreasonable that emotional distress damages may equal the amount of lost wages and that damage awards for emotional distress in employment discrimination cases are often substantial. *See, e.g., Chambers v. Penske Truck Leasing Corp.,* No. 1:11-cv-00381 LJO GSA, 2011 U.S. Dist. LEXIS 41359, *8 (E.D. Cal. Apr. 15, 2011) ("it is not unreasonable to consider that Plaintiff here may likewise be entitled to damages for emotional distress in an amount at least equal to her lost wages"); *Thompson v. Big Lots Stores, Inc.*, No. 1:16-cv-01464-LJO-JLT, 2017 U.S. Dist. LEXIS 20094, *13 (E.D. Cal. Feb. 13, 2017) (concluding defendant met its burden of showing that damage awards for emotional distress damages in employment discrimination cases are often substantial).

30.     Accordingly, a conservative measure of Plaintiff's claimed emotional distress damages is **$25,000.00**.

31.     **Attorneys' Fees Under Statute**: If attorneys' fees are recoverable by statute, the fee claim is included in determining the amount in controversy, regardless of whether the fee award is mandatory or discretionary. *Galt G/S v. JSS Scandinavia*, 142 F. 3d 1150, 1155-56 (9th Cir. 1998). Here, Plaintiff seeks attorneys' fees pursuant to the terms of FEHA, which authorizes attorneys' fees. *See,* Complaint at ¶¶ 66 and Prayer for Relief; Cal Gov. Code 12965(b). Similarly, Plaintiff seeks attorney fees' pursuant to his Labor Code 203 claim. *See,* Complaint at ¶ 100. Under *Chavez*, both past and future attorneys' fees are to be considered, including up until the time of trial. *Chavez*, 888 F.3d at 417; *Chambers*, 2011 U.S. Dist. LEXIS 41359, 2011 WL 1459155, at *4 ("the measure of fees should be that amount that can reasonably be anticipated at the time of removal, not merely those already incurred") (citation omitted).

32.     Employment discrimination cases have been found to "require substantial effort from counsel." *Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1035 (N.D. Cal. 2002) (finding that the jurisdictional minimum was "clearly satisfied" given that in the court's "twenty-plus years' experience, attorney's fees in individual discrimination cases often exceed the damages"). One court recently determined that $300 per hour is a reasonable rate for attorney's fees in

NOTICE OF REMOVAL OF ACTION TO UNITED STATES DISTRICT COURT (DIVERSITY)
FP 36945712.1

employment cases. *See, Sasso v. Noble Utah Long Beach, LLC*, No. CV 14-09154-AB (AJWx), 2015 U.S. Dist. LEXIS 25921, 2015 WL 898468, at *5 (C.D. Cal. Mar. 3, 2015). And courts in this district have held that "100 hours is an appropriate conservative estimate" for the number of hours expended through trial. Therefore, $30,000 (based on 100 hours at $300 per hour) is an "appropriate and conservative estimate" for recoverable attorney's fees. *Thompson*, No. 1:16-cv-01464-LJO-JLT, 2017 U.S. Dist. LEXIS 20094, at *16 (citing *Chambers*, 2011 U.S. Dist. LEXIS 41359, 2011 WL 1459155, at *5); *see also Stainbrook v. Target Corp.*, No. 2:16-CV-00090-ODW, 2016 U.S. Dist. LEXIS 74833, 2016 WL 3248665, at *5 (C.D. Cal. June 8, 2016) (concluding based on a $300 per hour attorney's fee rate and 100 hours of attorney work that Plaintiff's demand for attorney's under FEHA "adds at least $30,000 to the amount in controversy").

33.   Accordingly, a conservative estimate of Plaintiff's claimed attorneys' fee award is **$30,000.00**.

34.   **Punitive Damages**: Punitive damages are considered in determining the amount in controversy, as long as punitive damages are available under the applicable law. *Conrad Associates v. Hartford Accident & Indemnity Co.,* 994 F. Supp. 1196, 1198-99 (N.D. Cal. 1998); *Richmond v. Allstate Ins. Co.,* 897 F. Supp. 447, 450 (S.D. Cal. 1995). In California, punitive damages are available for violations of FEHA. *Andrade v. Arby's Rest. Group, Inc.*, 225 F. Supp. 3d 1115, 1143 (N.D. Cal. 2016); *see also, Rodriguez v. Home Depot, U.S.A., Inc.*, 2016 U.S. Dist. LEXIS 94176, *1 6 ("Because Plaintiff pleads wrongful termination in violation of public policy and Labor Code section[] 1102.5. . . punitive damages may properly be factored into the amount-in-controversy calculation."   Indeed, here, Plaintiff's Complaint alleges a claim for recovery of punitive damages and Plaintiff seeks punitive damages in two of his causes of action. *See,* Complaint at ¶¶ 45, 52, 61, 65, 70, 76, 77, 82, 83, 90 and 91, and Prayer for Relief.

35.   Defendants maintain that the facts here will ultimately demonstrate that Plaintiff is not entitled to punitive damages; however, if each of the facts as alleged by Plaintiff are taken to be true, a substantial punitive damages award is more likely than not. *See, e.g.*, *Radford*, 2011 Jury Verdicts LEXIS 15290 (awarding $420,000 in punitive exemplary damages in race

NOTICE OF REMOVAL OF ACTION TO UNITED STATES DISTRICT COURT (DIVERSITY)
FP 36945712.1

discrimination and failure to prevent discrimination case); *Issa*, 2006 Jury Verdicts LEXIS 44174 (awarding fifty million dollars in punitive damages on discrimination claim based on race and national origin).[3]

36.     As the court in *Narayan v. Compass Grp. USA, Inc.*, 284 F. Supp. 3d 1076, 1091 (E.D. Cal. 2018) explained, "if the Plaintiff prevails on all his claims, which [the court] must presume, the jury will have concluded that [Defendant] discriminated against [its] employee . . . [i]t is not at all difficult to imagine a jury imposing a substantial punitive damages award in light of such a conclusion." *See* also *Mejia v. Parker Hannifin Corp.*, No. CV 17-8477, 2018 U.S. Dist. LEXIS 13289, at *12 (C.D. Cal. Jan. 26, 2018) (explaining the court "need not put an exact numerical value on a potential punitive damages award to conclude that a substantial punitive damages award is likely if Plaintiff succeeds on his Complaint").

37.     **Summary of Amount in Controversy**: In summary, although Defendants deny each and every one of Plaintiff's claims and factual allegations, the damages that Plaintiff's Complaint seeks nevertheless include:

•     Lost wages at a reasonable minimum of $109,614;

•     Penalty under Labor Code **§** 98.6, assuming minimum alleged penalty of $10,000;

---

[3] In *Simmons*, the court denied Plaintiff's motion to remand, finding that although Plaintiff's complaint failed to specify the amount in controversy, Defendant properly demonstrated that the <u>amount</u> in controversy for purposes of establishing diversity jurisdiction was satisfied. The court considered the appropriateness of punitive damages pled in calculating the amount in controversy for a case alleging a claim under the FEHA, noting: "To this end, defendant highlights jury verdicts with substantial punitive damage awards. *See, e.g., Prasad v. University of Cal. Davis Med. Ctr.*, JVR No. 802857 ($60,000 punitive damage award); *Carrol v. Interstate Brands Corp. dba Wonderbread, dba Hostess & dba Dolly Madison, et al.*, Cal. Super. Ct. for the County of San Francisco Case No. 995728, 1 C.E.L.M. 68 (Sept. 2000) ($121,000,000 punitive damage award); *Lane v. Jaekel Aircraft Co.*, JVR No. 801112 ($40,000,000 punitive damage award). The fact that the cited cases involve distinguishable facts is not dispositive. Notwithstanding these differences, the jury verdicts in these cases amply *demonstrate the potential for large punitive damage awards in employment discrimination cases*. Although the facts of the instant action are far less egregious, Defendants have met their burden of showing by a preponderance of the evidence that the amount in controversy should include a punitive damages award." *Simmons*, 209 F. Supp. 2d at 1034-35 (emphasis added). Defendants maintain here that the facts will ultimately demonstrate that Plaintiff is not entitled to punitive damages; however, the potential for large punitive damages should be considered in calculating the amount in controversy.

NOTICE OF REMOVAL OF ACTION TO UNITED STATES DISTRICT COURT (DIVERSITY)
FP 36945712.1

1    •    Waiting time penalties under Labor Code section 203:  $11,538;

2    •    Emotional distress damages at a reasonable minimum of $25,000;

3    •    Attorneys' fees at a reasonable minimum of $30,000; and,

4    •    Punitive damages in an amount sufficient to meet the jurisdictional amount in

5    controversy, even if the court were to ignore lost wages through trial.

6    38.    Plaintiff alleges damages totaling no less than $186,152 before factoring in any

7    amount for punitive damages, which could extend beyond the $75,000 jurisdictional threshold in

8    their own right. Accordingly, given all of the circumstances, and although Defendants deny that

9    the Plaintiff is entitled to any damages at all, Defendants have demonstrated it is more likely than

10   not that based on the allegations pled in Plaintiff's Complaint, Plaintiff is seeking an amount in

11   controversy exceeding $75,000, exclusive of interest and costs.

12   **IV.    TIMELINESS OF REMOVAL**

13   39.    Under 28 U.S.C. § 1446(b), a "notice of removal of a civil action or proceeding

14   shall be filed within 30 days after the receipt by the defendant, through service or otherwise,…"

15   The 30-day period for removal is triggered once service occurs. *Murphy Bros., Inc. v. Michetti*

16   *Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999).

17   40.    Aytu Bioscience, Inc. was served with the Complaint on December 16, 2019 and

18   Defendants Josh and Jarrett Disbrow were served on January 3, 2019. Defendants file this

19   removal on January 15, 2020. This Removal is accordingly timely.

20   **V.    DEFENDANTS SATISFY ALL REQUIREMENTS TO REMOVE THIS CASE ON**

21   **DIVERSITY GROUNDS**

22   41.    Because Defendants are citizens of a state other than California, complete

23   diversity exists under 28 U.S.C. § 1332(a).

24   42.    Additionally, as set forth above, Defendants have demonstrated that the amount

25   in controversy more likely than not exceeds $75,000, exclusive of interest and costs. Thus, the

26   amount-in-controversy requirement for federal diversity jurisdiction is also satisfied. 28 U.S.C.

27   § 1332(a).

28   ///

NOTICE OF REMOVAL OF ACTION TO UNITED STATES DISTRICT COURT (DIVERSITY)
FP 36945712.1

43.     Because complete diversity exists between Plaintiff and Defendants, and the matter in controversy exceeds $75,000, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a). Accordingly, pursuant to 28 U.S.C. § 1441(a), Defendants may remove this action to this Court.

44.     Venue lies in the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1441(a) and § 1391(a) because the State Court Action was filed in this District and this is the judicial district in which the action arose. *See,* 28 U.S.C. § 84.

45.     This Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b), which provides "The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based."  Here, the Complaint was filed on December 4, 2019. It was served on Aytu on December 16, 2019, thus, the deadline to file the instant Notice of Removal is January 15, 2019. Adams Decl., at ¶ 2.

46.     Pursuant to 28 U.S.C. § 1446(d), written notice of the filing of this Notice of Removal is being provided to all adverse parties who have been served in the action, and a copy of this Notice is being filed with the Clerk of the Superior Court of the State of California for the County of San Francisco.

**WHEREFORE,** Defendants pray that this action be removed to this Court, that this Court accept jurisdiction of this action, and that this action be placed on the docket of this Court for further proceedings, the same as though this action had originally been instituted in this Court.

Dated: January 15, 2020                          Respectfully submitted,

                                                 FISHER & PHILLIPS, LLP

                                         By:     */s/ Vincent J. Adams*
                                                 JASON A. GELLER
                                                 VINCENT J. ADAMS
                                                 Attorneys for Defendants
                                                 AYTU BIOSCIENCE, INC., JOSH DISBROW,
                                                 and JARRETT DISBROW

15

NOTICE OF REMOVAL OF ACTION TO UNITED STATES DISTRICT COURT (DIVERSITY)

**CERTIFICATE OF SERVICE**

       I am employed in the County of San Francisco, State of California in the office of a member of the bar of this Court whose direction the following service was made. I am over the age of 18 and not a party to the within action; am employed with the law offices of Fisher & Phillips LLP and my business address is One Embarcadero Center, Suite 2050, San Francisco, California 94111-3712.

       On the date set forth below, I served the foregoing document entitled: **NOTICE OF REMOVAL OF ACTION TO UNITED STATES DISTRICT COURT (DIVERSITY)** on all the appearing and/or interested parties in this action by placing ☐ *the original* ☒ *a true copy* thereof enclosed in sealed envelope(s) addressed as follows:

| | |
|---|---|
| Matthew J. Matern | ***Attorneys for Plaintiff Robert David Jaekel*** |
| Joshua D. Boxer | |
| Matern Law Group, PC | Telephone:  (310) 531-1900 |
| 1230 Rosecrans Avenue, Suite 200 | Facsimile:  (310) 531-1901 |
| Manhattan Beach, CA  90266 | Email:  mmatern@maternlawgroup.com |
| | Email:  jboxer@maternlawgroup.com |
| | |
| Corey B. Bennett | ***Attorneys for Plaintiff Robert David Jaekel*** |
| Elizabeth A. Medrano | |
| Matern Law Group, PC | Telephone:  (510) 227-3998 |
| 1330 Broadway, Suite 428 | Facsimile:  (310) 531-1901 |
| Oakland, CA  94612 | Email:  cbennett@maternlawgroup.com |
| | Email:  emedrano@maternlawgroup.com |

☒  **[VIA FEDEX]**  I am readily familiar with the firm's practice for collection and processing of correspondence for overnight delivery by Federal Express. Under  that practice such correspondence will be deposited at a facility or pick-up box regularly maintained by Federal Express for receipt on the same day in the ordinary course of business with delivery fees paid or provided for in accordance with ordinary business practices.

☐  **[VIA UNITED STATES MAIL]**  I enclosed the document(s) in a sealed envelope or package addressed to the person(s) whose address(es) are listed above and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in San Francisco California, in a sealed envelope with postage fully prepaid.

    I declare under penalty of perjury under the laws of the State of California and of the United States that the foregoing is true and correct. Executed on January 15, 2020 at San Francisco, California.

| | | |
|---|---|---|
| Leah I. Wahlberg | By: | |
| Print Name | | Signature |

09628.0352

FP 36945712.1